## Richmond

JOYCE ANNETTE JENKINS v. COMMONWEALTH OF VIRGINIA.

April 23, 1976.

Record No. 750987.

Present, All the Justices.

*Louis Ellenson* (*Ellenson, Fox and Whittan, Inc.*, on brief), for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

We consider the sufficiency of the evidence to sustain the conviction by the court below, sitting without a jury, of Joyce Annette Jenkins of burning her automobile with intent to injure the insurer of the vehicle, in violation of Code § 18.1-85, then in effect and applicable.

The vehicle involved, a 1973 Chevrolet Monte Carlo, was purchased by the defendant in February, 1973, for $5200 and had been operated approximately 13,000 miles. On the afternoon of April 2, 1974, Mrs. Jenkins had gone to the Riverside Hospital in Newport News for therapy. Thereafter, she met a friend for dinner and shopping. En route to take her friend home, she thought she smelled "rubber burning". Defendant said: "The motor was racing so fast that . . . you couldn't hardly stop at the stop lights. . . ." A service station attendant adjusted the carburetor and "idled it down some". Defendant testified that on the way to her home in Gloucester the car "started doing the

same thing again, the motor started racing and I could smell rubber. . . ." She said that about a mile before reaching her home in a relatively uninhabited section where highway number 1104 is bordered on both sides by marsh lands, "the car all of a sudden, it went up black smoke underneath the hood and it was coming all inside". Mrs. Jenkins said that she had gotten out of the car and had been standing in the road for four or five minutes when William James Green came along in his truck. He picked her up and the two went to Green's home, called the fire department, and then, together with her husband and daughter, returned to the scene of the fire.

Green testified that when he came upon Mrs. Jenkins in the road and asked the trouble, she said, "my motor is on fire or something, smoke is coming out from under the hood". Green noticed that the fire was coming from the motor and from underneath the hood. He was very positive in his testimony about the absence of fire inside the car when they left the scene to call the fire department. He also observed that the horn had started a continuous blowing. Green said that by the time they got back the car was "nearly burnt up".

Robert F. Berry, Jr., assistant fire chief of the Abington Volunteer Fire Department in Bena, Virginia, testified that the department responded to the fire about 10:45 p.m. He said that when he arrived the car was completely engulfed in flames. He described the fire as "a very intense fire" that completely "gutted out" the car. He stated that the fire was most intense in the engine compartment and the front of the vehicle, and that the rear was the least affected. He observed a number of bystanders and a state trooper at the scene.

The loss was reported to the Pennsylvania National Mutual Casualty Insurance Company, which had insured the vehicle against loss or damage by fire. The claim was investigated by William E. Kahn, Sr., a company claims investigator. The company settled with Mrs. Jenkins for $3425. She was dissatisfied with the settlement, testifying that she could have sold the car for $1000 more than the amount she received. Kahn was asked if he found anything "to show there was any arson involved . . . in your investigation", and he replied, "No, we found nothing."

James H. Jessup, district arson supervisor for the state, was requested by the local authorities to investigate the fire. He went to Gloucester County to make the investigation on April 16, 1974. At that time the car was located in a lot behind a garage operated by James E. Harris, to which point it had been towed. It appears from

the evidence that the car was then in the same condition it was in following the fire.

Jessup testified that he did a salvage examination of the Jenkins automobile to determine what had happened and where the fire had originated. He said all of the electrical system was "just about completely consumed"; that the power brake unit, which was on the left side directly in front of the driver, had been completely consumed by the fire; that the only thing he found left on the engine was the block. He testified that there was gas in the tank and that the line leading from the fuel filter was intact, but that the carburetor had been completely consumed and the nut which held the fuel line onto the carburetor had been melted.

In the course of making his investigation, Jessup said that he dug out padding from under all four floor mats. These samples were sent to the Forensic Laboratory of the Commonwealth of Virginia where they were examined by Mrs. Mary Jane Burton, a forensic scientist. The material which Jessup had retrieved from the vehicle was sent to the laboratory in four separate containers, thereby keeping separate the material taken from under each mat. However, at the laboratory the matting in each of the containers was placed inside a big pot of water and boiled together.

Mrs. Burton testified that the boiling process removes any materials that are lighter than water, like petroleum products, and that they collect on top; that various tests and the analysis indicated that the "material was consistent with residue from fuel oils"; and that "it is consistent with the majority of materials that were in this boiling range that we call Number 2 fuel oils and this would include the diesel fuel, diesel oils and some kerosenes". She said the material "was not consistent with whole fuel oil, fuel oils as they would be bought or purchased".

Mr. Jessup was called as a witness and thereafter, over objection, the Commonwealth's Attorney was permitted to recall him three times. It is clear from Jessup's testimony that he believed the fire started inside the car and was of incendiary origin. It was his opinion that the defendant used a petroleum based product and "struck a match to it".

The testimony here discloses none of the indicia commonly associated with arson cases. Mrs. Jenkins was employed, was not financially embarrassed and was not in dire need of funds. She testified without contradiction that she owned a $60,000 home and a new trailer. Re-

possession of the car was not threatened or involved. There was no lien on the vehicle. There is no evidence that the defendant was dissatisfied with her automobile; that prior to the night of the fire it had given her any trouble; or that there was any reason why she would want to rid herself of it.

Mrs. Jenkins fully accounted for her actions on the afternoon and evening of April 2, 1974. She gave the names of two individuals who had observed some malfunction of the car on the night of April 2, 1974, one being a service station attendant. The Commonwealth did not refute any of this testimony.

No witness testified to smelling any petroleum fumes on or about the defendant, or at the site of the fire. The state trooper who was present at the scene was not called as a witness. Both the defendant and Green testified that the smoke and fire were coming from the engine and under the hood of the vehicle, not from the inside, when they left the scene to call the fire department.

In essence, the Commonwealth relies upon the fact that an analysis made weeks after the fire of the floor matting found in the rubbish of the burned vehicle disclosed a substance "consistent with residue from fuel oils". It is a matter of common knowledge that an automobile does not function without the presence of petroleum type products—gasoline, motor oil, grease, transmission fluid, etc. The intensity of this fire, whether accidental or of incendiary origin, was necessarily augmented by the petroleum products that were incident to the operation of the car. There is no evidence that Mrs. Jenkins ever purchased any petroleum products of any kind. Assuming that the matting under one or all of the floor mats did contain a residue from fuel oil, this fact alone does not establish the incendiary nature of or connect the defendant with the fire. There remains the possibility that the substance found in the matting had its origin from products used incident to the operation of the car, or, in any event, from a source other than Mrs. Jenkins.

The Commonwealth also attaches some significance to testimony that the defendant appeared to be "very calm" during the fire and that at one time she was observed seated in a truck with a gentleman to whom she turned "and smiled . . .".

While there may be a suspicion of guilt in this case, the evidence does not exclude all reasonable conclusions inconsistent with that of defendant's guilt. It does not overcome the presumption of innocence to which she is entitled; rebut the presumption that the fire was of

accidental origin; or prove her guilt beyond a reasonable doubt. The evidence is not sufficient to establish that the defendant feloniously set fire to her automobile with intent to injure the insurer of the vehicle.

The judgment of the lower court is reversed, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*